NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-497

AARON GOODALE

vs.

TOWN OF UPTON & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following his termination as the fire chief of the town of Upton, the plaintiff, Aaron Goodale, filed suit against the town, the town manager, and members of the town selectboard alleging breach of contract, defamation, whistle blower retaliation, and age and disability discrimination.  A judge of the Superior Court allowed the defendants' motion for summary judgment, and this appeal ensued.  We affirm.

Discussion.  "We review a grant of summary judgment de novo," Deutsche Bank Nat'l Trust Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 252-253 (2015), to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the nonmoving party

---

[1] Derek Brindisi, Gary Daugherty, Robert Fleming, Stephen Matellian, and James Brochu.

is entitled to judgment as a matter of law" (citation omitted). Molina v. State Garden, Inc., 88 Mass. App. Ct., 173, 177 (2015).

"It is . . . the plaintiff's burden in this case, as the nonmoving party, to show, through his submissions, specific facts that demonstrate that there is a genuine issue for trial." Cole v. New England Mut. Life Ins. Co., 49 Mass. App. Ct. 296, 297 (2000). A party may not rely on the allegations of an unverified complaint to defeat summary judgment. See Green v. Zoning Bd. of Appeals of Southborough, 96 Mass. App. Ct. 126, 132 (2019), quoting LaLonde v. Eissner, 405 Mass. 207, 209 (1989) ("[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment"). Here, even though "[e]ach statement of fact shall be supported by" an appropriate and accurate record reference, Mass. R. A. P. 16 (a) (7) and 16 (e), as appearing in 481 Mass. 1628 (2019), the plaintiff has relied primarily on the allegations of the unverified amended complaint on appeal, referring only occasionally to selected portions of the transcript, the record, and the judge's memorandum. In the absence of appropriate citation to the record, we may (and do) affirm the judgment on the basis of the appeal as presented. However, while "we are not obliged to read the entire [record] in search of testimony that may support arguments in the brief,"

Cole, supra, we have, in our discretion, also conducted a de novo review of the record, and likewise find no reason to disturb the judgment.  We therefore summarily address the arguments as they have been made to us.

1.  Breach of contract.  Under the provisions of the so-called "weak chief" statute, G. L. c. 48, § 42A, the town entered into a contract with the plaintiff in 2010 that permitted the town to terminate his contract either with cause, or in the alternative, without cause if it provided severance equal to six months' salary, as well as payment of accrued but unused vacation, and health insurance for the same six month period.  On January 3, 2018, the town manager gave the plaintiff a letter of reprimand regarding certain aspects of his performance.  The plaintiff attempted to grieve the reprimand under the town's personnel bylaws (initial grievance), which he claimed were incorporated into his contract by reference.  The town's counsel responded by stating that the grievance procedure was inapplicable to the plaintiff, and that even if it was applicable, the initial grievance was denied.  The plaintiff did not pursue the next steps of the grievance procedure.  The town subsequently terminated his employment in 2018 but did not pursue a cause-based termination.  Instead, the town terminated his contract without cause, paying the requisite severance and vacation pay.  The plaintiff did not grieve his termination.

The plaintiff argues on appeal, as he did in the Superior Court, that the town breached the contract by failing to process his initial grievance, by depriving him of a hearing before the personnel board, and by terminating his employment. On appeal (and in the Superior Court) the town argued that the breach of contract claim should be dismissed because, even if it applied to him, the plaintiff failed to exhaust the grievance procedure. The judge dismissed the breach of contract claim on this basis. We agree that the breach of contract claim (and associated request for declaratory judgment) was properly dismissed.

Assuming without deciding that the grievance procedure in the town bylaws was incorporated by reference in his employment agreement, the plaintiff was required to exhaust -- or at least attempt to exhaust -- the grievance procedure. While the town's letter to the plaintiff claimed the grievance procedure did not apply to him, the letter also stated in the alternative that to the extent the grievance procedure applied, the grievance was denied. Thus, the town denied the initial grievance on the merits, placing the plaintiff on notice of the necessity of advancing the grievance to the next step of the procedure, and also placing the plaintiff on notice that the town may have considered a termination grievance on the merits. However, the plaintiff "did not follow the grievance procedure, and that

4

omission, as a matter of law, is fatal to [his] claim."  O'Brien
v. New England Tel. & Tel. Co., 422 Mass. 686, 695 (1996).

Without citation to authority, the plaintiff contends that
any further attempt to grieve would have been futile.  The
plaintiff has not, however, placed facts in evidence to create a
genuine dispute about the futility of pursuing either the
initial grievance or a potential second grievance based on the
termination.  Cf. Balsavich v. Local Union 170, Int'l Bhd. of
Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 371 Mass.
283, 286 (1976) (employee may bypass grievance procedures and
seek judicial remedies only when employer "repudiates or
otherwise nullifies" grievance procedure).  Given that the town
also rejected the initial grievance on substantive grounds, we
cannot say that it would have been futile for the plaintiff to
have advanced that grievance to the next step, or to grieve his
termination.  Put another way, in the absence of (1) an effort
by the plaintiff to process grievance(s) through the steps of
the grievance procedure, and (2) a refusal by the town to
process the grievance(s), the plaintiff has not placed facts in
dispute as to a breach or repudiation of the grievance
procedure.  See Azzi v. Western Elec. Co., 19 Mass. App. Ct.
406, 409 (1985) (no showing that company "repudiated or
otherwise nullified the grievance . . . procedures").  To the
extent that the plaintiff relies on the facts that it was a

small town and the town manager or personnel board were unlikely to change their minds, he has offered no facts to support the allegations, nor any legal authority to suggest that the allegations, if supported, would rise to the level of futility or repudiation.

Alternatively, and even if the grievance procedure did not apply to the plaintiff, the plaintiff failed to place facts in evidence to create a genuine dispute whether he was harmed by the claimed breach of the contract. See Vacca v. Brigham & Women's Hosp., Inc., 98 Mass. App. Ct. 463, 467 (2020). Under the employment agreement, the town was permitted to terminate the plaintiff without cause so long as he was appropriately compensated. The plaintiff received all contractual severance and vacation pay following his termination. Thus, he suffered no harm, and summary judgment on the count for breach of contract was properly granted as a matter of law. See id. at 467.

2. Defamation. "In order to state a claim of defamation, a plaintiff must allege facts indicating that (1) the defendant published a false statement regarding the plaintiff -- that is, the defendant communicated the statement concerning the plaintiff to a third party; (2) the statement could damage the plaintiff's reputation in the community; and (3) the statement caused economic loss or is otherwise actionable without proof of

6

economic loss." Flagg v. AliMed, Inc., 466 Mass. 23, 37 (2013). On appeal as he did in the Superior Court, the plaintiff points to deposition testimony to show that he was defamed by the defendants because unnamed people spread unspecified "scuttlebutt" about him.

While the plaintiff claims that his reputation in the community has been damaged, he has failed to place facts in dispute to show that damage to his reputation was caused by actionable statements improperly communicated to a third party by any one of the defendants. The town is immune from suit for intentional torts. G. L. c. 258, § 10 (c); Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 626 (2012). As to statements allegedly attributable to the individual defendants, the plaintiff has not articulated on appeal what the statements forming "scuttlebutt" were, who spread them, or to whom the "scuttlebutt" was communicated. The chair of the selectboard said in a deposition that there had been "scuttlebutt," but he also stated that he had no idea which individuals were talking about the plaintiff.

The town relies on this evidence to show that there were no facts in dispute that the named defendants made or published defamatory statements, and thus no reasonable likelihood of success at trial as to this issue. Once this showing was made, the burden on summary judgment shifted to the plaintiff to

7

submit admissible evidence to support an inference that the individual defendants each published defamatory statements to third parties. See generally Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711-712 (1991); Green, 96 Mass. App. Ct. at 132. However, absent evidence in the summary judgment record that any of the individual defendants disclosed false information (or indeed any information) about the plaintiff to others in the town,[2] the motion for summary judgment was properly allowed. See McCone v. New England Tel.& Tel., 393 Mass 231, 235-236 (1984). Compare Bratt v. International Business Machs. Corp., 392 Mass. 508, 509 (1984).

To the extent that the plaintiff claims that the town manager defamed him by issuing the letter of reprimand, placing him on administrative leave (and issuing a letter to that

---

[2] The plaintiff's brief on appeal relies only on the "scuttlebutt" statement. We have nonetheless reviewed certain portions of the record. In his answers to interrogatories and his deposition testimony, the plaintiff stated that third parties told him that the town manager called a meeting and informed the employees that the plaintiff had been terminated due to financial improprieties. The statement is arguably multilevel hearsay. See Mass. G. Evid. § 805 (2023). Cf. Wingate v. Emery Air Freight Corp., 385 Mass. 402, 405 (1982). The town manager's statement would be admissible both as an admission and for its nonhearsay purpose to show that the statement was made, but what a third party told the plaintiff is inadmissible hearsay, not based on personal knowledge. See Mass. G. Evid. § 801(a) (2023); Madsen v. Erwin, 395 Mass. 715, 721 (1985) ("Hearsay in an affidavit is unacceptable to defeat summary judgment"); Whirty v. Lynch, 27 Mass. App. Ct. 498, 499-500 (1989) (assertions "based on hearsay or supposition" properly disregarded on summary judgment).

effect), and terminating his employment, the town manager enjoyed a qualified privilege to do so, and to share that information with those with a need to know.[3]  See Foley v. Polaroid Corp., 400 Mass. 82, 94-95 (1987).  For purposes of the defamation claim, the issue is not whether the town was correct in its assessment of the plaintiff's performance, but whether it acted within the scope of its qualified privilege.[4]  Id.  On the basis of the arguments as presented,[5] the town manager's disclosure to the board fell within the ambit of "the employer's legitimate interest in the fitness of an employee to perform his or her job," McCone, supra at 235, quoting Bratt, supra, and summary judgment was properly granted as a matter of law.  Cf. Mulgrew v. Taunton, 410 Mass. 631, 634-635 (1991).

3.  Whistleblower claims.  The plaintiff also asserts that the town violated the Whistleblower Act by terminating him for reporting fraud.  See G. L. c. 149, § 185 (a) (5).  To prevail

---

[3] The letter of reprimand was carbon copied to town counsel.  The chair of the selectboard was informed of the town manager's dissatisfaction with the plaintiff's performance and the town manager's desire to terminate the plaintiff's contract without cause.

[4] The parties relied on facts not presented in the factual record at oral argument to support their claims regarding the propriety of the discharge.  We do not consider these arguments.

[5] The plaintiff has not addressed qualified privilege either on appeal or in the Superior Court, and the issue is waived.  See Zoning Bd. of Appeals of Lunenburg v. Housing Appeals Comm., 464 Mass. 38, 55 (2013); Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

on this statutory claim, the plaintiff must establish that (1) he "engaged in an activity protected by the act; (2) the protected activity was the cause of an adverse employment action, such that the employment action was retaliatory; and (3) the retaliatory action caused [him] damages."  Edwards v. Commonwealth, 488 Mass. 555, 568-569 (2021).

The plaintiff reported in 2016 that an employee was plowing while out of work on medical leave, and reported in March of 2017 that a building inspector gave preferential treatment in awarding an occupancy permit.  Reporting fraud is conduct protected under the Whistleblower Act.  See G. L. c. 149, § 185 (b) (3); Trychon v. Massachusetts Bay Transp. Auth., 90 Mass. App. Ct. 250, 256-257 (2016).  Even assuming these reports rose to that level, the reports predated the town manager's tenure,[6] and the town manager disclaimed any knowledge of them in his deposition.  On appeal, the plaintiff has not brought to our attention any admissible evidence to show that the town manager knew of the reports, and our review of the record discloses none.  The act requires that "the employer knew of the protected activity before undertaking the retaliatory action."  Edwards, 488 Mass. at 573.  See Mole v. University of Mass., 442 Mass. 582, 592 (2004) (where "adverse action is taken against a

---

[6] Derek Brindisi became town manager on July 31, 2017.

satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity, an inference of causation is permissible").  Because the plaintiff has not placed facts in dispute to show a causal connection between protected activity and his subsequent termination, his whistleblower claim was properly dismissed on summary judgment.

4.  Discrimination.  The plaintiff brought claims of employment discrimination based on age and disability.  "To prove a claim of employment discrimination under the statute, a plaintiff must show 'that he or she is a member of a protected class; that he or she was subject to an adverse employment action; that the employer bore discriminatory animus in taking that action; and that that animus was the reason for the action (causation)'" (quotation and citation omitted).  Adams v. Schneider Elec. USA, 492 Mass. 271, 280 (2023).  On summary judgment, the moving party must show that there was a legitimate, nondiscriminatory reason for its action, and the plaintiff must then place facts in dispute to show that the employer's stated reasons were pretextual.  Id. at 281.

The summary judgment record is devoid of evidence demonstrating a genuine dispute of fact regarding discrimination of either type.  The parties' Superior Court Rule 9A (b) (5) statements of undisputed facts do not directly address the

11

discrimination count of the complaint.  However, the defendants'

rule 9A (b) (5) statement contains the assertion, admitted by

the plaintiff, see Godfrey v. Globe Newspaper Co., 457 Mass.

113, 121 (2010), that the person who replaced the plaintiff was

older than the plaintiff.  See O'Connor v. Consolidated Coin

Caterers Corp., 517 U.S. 308, 311-312 (1996) (replacement of

plaintiff by person in protected age class but substantially

younger permits inference of age discrimination, but no

inference drawn from replacement by one insignificantly

younger).  No other reference to age may be found in either the

rule 9A (b) (5) statements or the verified charge filed with the

Massachusetts Commission against Discrimination.[7]  Instead, the

verified charge contains only assertions of a breach of the

covenant of good faith and fair dealing, retaliation for the

exercise contractual rights, and requests a declaratory judgment

regarding contractual obligations.

Although the parties hotly contest the plaintiff's

performance, there must be some articulated claim and basis for

an inference of age discrimination.  See O'Connor, 517 U.S. at

311-312.  Contrast Adams, 492 Mass. at 282.  None has been

advanced here.  Similarly, the plaintiff has failed to

---

[7] The verified charge was incorporated by reference into the
amended complaint.  The plaintiff relies on the amended
complaint on appeal.

12

articulate any basis for his assertion that he was terminated on account of a disability.[8]  The "plaintiff was required to respond by 'set[ting] forth specific facts showing that there is a genuine issue for trial.'  Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974).  As a result of the plaintiff's failure in this

_____

[8] With respect to the disability claim, we note that the plaintiff offered evidence that he suffered from hypertension in 2016 when he was working under prior town manager Blythe Robinson.  The defendants submitted evidence on summary judgment that plaintiff took leave without incident, and was paid in accordance with the selectmen's emergency leave bylaw.  Two years later, on April 2, 2018, the current town manager initiated the process for placing the plaintiff on leave without pay.  See Mole, 442 Mass. at 595 (no inference of discrimination or retaliation where passage of time substantial).  The town manager delivered the notice of administrative leave without pay on April 3, 2018.  However, it was not until the afternoon of April 3, 2018, that the plaintiff sent a letter stating that he had high blood pressure and requesting medical leave.  Thus, the plaintiff has not placed facts in dispute to show that the defendants were aware of a recurrence of his medical condition or his request for medical leave before the town manager made the decision to place him on administrative leave.  The only evidence in the record is that the plaintiff did not inform the town of his medical condition until after the town manager obtained approval to place him on administrative leave.

13

regard, the grant of summary judgment to the defendants was appropriate." <u>Kourouvacilis</u>, 410 Mass. at 716.

<u>Judgment affirmed</u>.

By the Court (Green, C.J.,
  Wolohojian &
  Sullivan, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  August 8, 2023.

---

[9] The panelists are listed in order of seniority.